In The United States District Court
Southern District of Florida

FILED BY _PG_ D.C.

SEP 10 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Jose Luis Reyna, Plaintiff

V.

Palm Beach County ("PBC"), and
Palm Beach Sherriff Office ("PBSO"), and
    Ric L. Bradshaw as PBSO Sherriff,
Collectively the "County", and
Department of Homeland Security ("DHS"), and
    Alejandro Mayorkas as DHS Secretary, and
Immigration & Customs Enforcement ("ICE"), and
    Damian Weston as Acting SDDO,
All collectively as the "Defendants".

"Ex Parte Application For Temporary Restraining
Order against Defendants invalid warrant
or detainer and order to show cause
For Preliminary Injunction."

Now comes the Plaintiff, "Jose Luis Reyna", Pursuant to Fed. R. Civ. Pro Rule 65(b)(1), is requesting For This Honorable Court to Grant an Ex Parte Temporary Restraining Order ("TRO") to thwart the defendants From Acting on, Executing or enforcing a Constitutionally invalid warrant or Detainer.

The Plaintiff alleges That The "Federal Administrative Hold", or "Immigration Hold", or "ICE Hold" has resulted or Caused his Pretrial Extended Detention Without Probable Cause, in violation of The Fourth Amendment to The Constitution of The United States, and Federal rules of Criminal Procedure, The Administrative Procedure Act ("APA"), Florida Constitutional Law, Florida State Law, and other Forthcoming Reasons.

The Defendants warrant, hold or detainer is Lacking all the required elements For a Legal Judicial warrant. As a First Example of Such Lacking, The Plaintiff Points this Honorable Court to Note The Comments of The advisory Committe on Fed. R. Crim. P. Rule 9, Which states The Following:

i The Provision of Rule 9(a) That a warrant maybe issued on The basis of an information (or other Legally valid charging Document including a criminal complaint or indictment) only if The Latter is Supported by Oath, is nesecitated by The fourth Amendment To The United States Constitution.")

See ALbrecch V. United States, 47 S.ct 250, 273, U.S1. 571 LEd. 505.

— Here Mr Reyna's Warrant is not supported by Oath—

Therefore, The Plaintiff Seeks an "ExParte TRO" from This Honorable Court Directing The defendants to remove The Constitutionally invalid Warrant, hold or Detainer, so he can Post Bond again on his State Criminal Charges and be released from County Custody, and not be unlawfuly Taken by ICE to start The Perpetual Detention Process all over Again.

In Support of The Fore going statements, The Plaintiff asserts The Following: The Plaintiff has a Computer Science BackGround and no LEGAL Expirence, Therefore, The Plaintiff ProSe is Seeking to Invoke Haines V Kenner, 404 U.S 519, 520, 91 S CT 594, 30 L Ed 2d 652 (1972), Which holds: ProSe Litigants are held to Less stringent Standards Than More Formal Pleadings Drafted by any Professional Court Attorney's. Please see Estelle V. Gamble, US 97 S.ct 285, 50 L.Ed. 2d 251 (1976); and Haines v Kenner, 404 U.S. 519, 520, 92 S CT 594, 30 L. Ed. 2d 652 (1972).

In additiion, The Courts had been advised to Give Leway to Layman Litigants to allow for development of Potential meritorious claims. Please See Cruz V. Berto, 405 US 319 (1972).

## Legal Standard

The Plaintiff is fully aware that an "Ex Parte TRO" requires a valid reason as to why the Defendants should not be notified; to comply with Fed. R. Civ. P. Rule 65(b)(1), which states:

"The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if "Specific facts in an affadavit or a verified complaint clearly show that immediate or a irrepairable injury, loss or damage will result to the movant before the adverse party can be heard in opposition; and the movants attorney's certifies in writting any effort made to give notice and the reason why it should not be required."

In addition he also understands that an Ex Parte TRO is only appropiate where the applicant "would face irrepairable harm so immediate that it would be improper to wait until after a Preliminary Injunction hearing to enjoin the non-movants conduct." Giad V. Johnson, 905 F. Supp. 2d 782, 791 (E.D. Mich 2012), and

In order to obtain a TRO, the Plaintiff must demostrate the following:

"(1) That there is a Probable Likelihood of Success on its merits, (2) irrepairable harm or injury will be suffered if the relief is not Granted, (3) The harm Suffered by the Movant in absence of an injunction would exceed harm suffered by the opposing Party if the injunction is issued, and (4) if an injunction would dissever the Public interest."

See N. Am. Med. Corp. V. Axiom WorldWide, Inc. 522 F3d 1211, 1217.

The Plaintiff will show that an "Ex Parte is required to Prevent Further harm." until a hearing, where he will Further show that a Preliminary Injunction is needed to Prevent more actual harm. Fed. R. Civ. P. 65(b.

As the United States Supreme has explained, The extremely Limited availability of Ex Parte TRO's reflects the facts that our entire Jurisprudence Runs Counter to the notion of Court Action taken before reasonable notice and opportunity to be heard has been Granted Both sides of the dispute."

Granny Goose Foods V. Teamsters, 415 US 423, 439 (1974).

## Background

The following is The Plaintiff Sworn Declaration Under Penalty of Perjury, in accordance with Federal Statute 28 U.S.C 1746.

Jose Luis Reyna, (Herein After "Plaintiff", "Declarant", "Mr Reyna") makes The following statements based on Declarants own First hand knowledge, information, and belief, unless otherwise stated.

I Jose Luis Reyna hereby Depose and Declare.

After being Granted a new trial and his Charges reversed by The Florida Fourth DISTRICT Court of Appeals on August 26. 2020 - Based on a violation to The PLAINTIFF RIGHTs under The U.S. Const. Amends. V, XIV and other State Laws and Procedures (see exhibit A), which decision was later declined for reconsideration by The Florida Supreme Court (see exhibits) - A mandate was issued on October 30th. 2020 to The Florida Department of Corrections ('DOC') in Tallahassee, Florida, and in turn it issued an order to Centurs Correctional Institution at Centurs, Florida.

Mr Reyna was released into The Custody of The Santa Rosa County Sheriff, To be Taken to Their respective County facility (Santa Rosa County Jail) to await Pickup by The Palm Beach County Sheriff Department.

On November 14th. 2020 (15) days Later, a transport Company Picked up Mr Reyna and he was delivered to The Palm Beach County main De-Tention Center at Gun club road 24 Hours later.

Mr Reyna arrived on Nov 15th, 2020. Upon arrival he was held in The holding Tank, Processed and Booked on his reversed State charges, Than he was taken into Quarantine.

On November 17, 2020, (2) Days Later, The 15th Judicial Circuit Court of Palm Beach County, Florida, The Honorable Judge Cheryl Caracuzzo held a Bond hearing at The request of Mr Reyna's attorney and a Bond was Granted.

Mr Reyna Posted Bond The sameday, and upon Posting Bond he was released from his State charges and Booked on a "Federal administrative warrant" or Better known as an "ICE hold". This was done on Paper as he Physically remained in The Same cell and under The Custody of The PBSD.

On November 19, 2020 (2) days Later, Mr Reyna was Physically Processed and Given his Personal Property, after which he was taken to The #10 holding cell to await for "ICE".

while being escorted to the holding cell, he was told by the escorting Deputy, that no phone calls were allowed from that holding cell, blocking his ability to contact his attorney.

Some time Later, two individuals arrived at Intake, one male and one female. These individuals had a 'Detention' Logo on their vest and did not identified themselves as 'ICE' agents, - Later, Mr. Reyna Learned that they in fact worked for a contracting company, and were not 'ICE' agents - They collected him, another inmate, their property, handcuffed, shackle them, and proceeded to take them to Krome Detention Center ('KDC') in Miami, Florida.

When he arrived, Mr Reyna was given a Notice to Appear (NTA), an I-200 form with the details of his warrant, and other details of his warrant, and details of his detention. (See Exhibit A).

Mr Reyna learned that he was being Placed in deportation Proceedings, because according to 'ICE', he is currently in the United States as a 'Legal Permanent Resident' (LPR), and he was an 'LPR' in the year 2000, when he pled guilty to a case for simple Possession of Cocaine, which made him deportable.

The 2000 case, was Mr Reyna's First and Last Possession Charge, for which he received 18 months Probation, Drug Threatment, and Random drug testing, for Possession of .005 grams of Cocaine - Found in the back Floor of his car - for his Personal use, as he was deemed by the court to have a drug abuse Problem, which is why the above Sentence was Given.(See Exhibit C).

Note: Utilizing the information in the documents Provided by ICE, Mr Reyna investigated the details for the reason why he was deportable and in doing so, he discovered that, in his 2000 case, he got ineffective assistance of counsel, in violation of his Sixth Amendment Rights, which he is currently challenging in the 15th Judicial Circuit court of Palm Beach County via a Post Conviction motion with the information Provided by 'ICE', - that he was an LPR at the time of the charge, and that he is being Placed in deportation Proceedings because of it, and other Provided details - and he is seeking to set aside and vacate his sentence. (See Exhibit P)

At this Point, Mr Reyna adviced the intake Agent, that according to E-verify - a DHS System - he is a U.S citizen; This information was discovered by Mr Reyna in 2015 via a E-verify report, which he had to Run on himself to Get a computer contract.

Mr Reyna Never Verified This information with the USCIS, as he was too busy Working and Tending to his Life.

The 'ICE' Agent, told Mr Reyna That The only way That could be Possible was, if he was a 'Derived citizen' by means of his or Father, or because his mother remarried in The U.S, by means of his step father. The agent Further adviced him That, There will be an opportunity to review and challenge his status after Booking. (see Exhibit X for more Details).

Mr Reyna, was Processed and Taken into Custody, and he also made The medical Staff aware of his health issues which Placed him in The high risk category for Covid-19.

Shortly after, Mr Reyna met with his family via Phone to Understand The nature of his Detention at 'KDC', and The impact That it may have on his State case, as it could be use against him in 'INA' Proceedings, as INA Law allows The Judge Discretion To Consider open cases to Determine wether The alien is Deportable or not.

If Mr Reyna Dealt with his INA case First, This would have meant That He would have to defend himself in Two distinct Courts under Two Distinct Judges with to Distinct Goals, one To Prove his innocence in state court and The other To remain in The U.S with his family.

Placing his health concerns aside and after analyzing his options with his Criminal and Immigration Attorney's, It was collectively Decided For his best Legal Interest to Petition both The INA and State Court to take Mr Reyna back to Palm Beach County on December 17, 2020, to Deal with his State charges before Dealing with his Case at ICE. Both Courts Agreed and Mr Reyna was Transported back To Palm Beach County Jail.

Several Months Later, Mr Reyna decided to inquire on The Details of his Detention;

he Petitioned The 'inmate records' Department, via 'inmate request' #5214298 using The Dorm Kiosk, and he was adviced by clerical Specialist 'Britany Sashington', ID #9624, That he has an 'ICE' hold or a 'Federal Administrative Warrant/Hold', Which means That he is back in The Same Situation he was in November 2020 (see exhibit Y).

Mr Reyna went Further and Petition The 'Records Department' for a copy of The warrant. he was told by Central Records Specialist Devia Carrington via inmate request #5301953, That the 'Federal Administrative Hold' does not have a warrant attached. (See Exhibit Z).

In Summary, If Mr Reyna Tries to Post Bond again he will be released from his State Charges on Bond, but Then Booked on The ICE hold to await Pickup once more, by non-ICE Personnel.

Therefore, The Plaintiff asserts That his Fourth Amendment Rights are being Violated and Questions The Legality of his Extended Pretrial Detention. With The foregoing, Mr Reyna makes The Following Legal claims:

1) That he is/was held against rights afforded by The Fourth Amendment To The Constitution of United States, and

2) That his warrant, hold or Detainer is not valid under Federal Law, and

3) That ICE is holding or wants To hold him with a warrant Which violates The Administrative Procedural Act ('APA'), and

4) he is/was Detained against Florida Constitutional Law, and

5) his warrant, hold or Detainer violates The rules codified within The Florida Statutes, and

6) The warrant, hold or Detainer Violates The Florida rules of criminal Procedure, and

7) That he was Falsely imprisoned as Neither of The Defendants had State or Federal Authority To Detain him.

In The Following Pages Mr Reyna will Describe The Details To Support each claim

(i) Constitutional Law: Fourth Amendment.

Mr Reyna is in Pre-trial and in a perpetual never ending extended detention cycle. Because, if he tries to post bond again, he will be released on his state charges and then Booked again under a "federal administrative hold", to await for ICE to Pick him up, to be taken back to Krome Detention Center, where Mr. Reyna will have no choice but to just ask the Courts again to be taken back to deal with his state charges; and thus continuing the unlawful Perpetual Extended Detention Cycle all over again.

Mr Reyna believes this to be by design, so he can stay in detention to force a plea on his case, which was reversed by the 4th DCA and its decision affirmed by the Florida Supreme Court, to mitigate County Liability. In short, Mr Reyna Extended Pre-trial detention is by design and its Practice go against state and Federal Constitutions.

Mr Reyna asserts, that he is being held unlawfully, seized, and deprived of his Liberty in direct violation of the Fourth Amendment to the Constitution of the United States, which is codified as follows:

U.S.C.A. Const. Amend. IV - Search and Seizure; Warrants
"The right of the People to be secure in their Persons, houses, Papers, and effects, against unreasonable Search and Seizures, shall not be violated, and no Warrants shall issue, but upon Probable Cause, Supported by Oath or Affirmation, and Particularly describing the Place to be Search and the Persons or Things to be Seized."

Mr Reyna relies on the Fourth Amendment to challenge his Pre-trial detention; as the Supreme Court stated in Manuel V. City of Juliet, 137 S. Ct. 911, 917, 197 L.Ed. 2d 312 (2017) ("This Court decided some four decade ago that a claim challenging Pretrial detention fell within the Scope of the Fourth Amendment.")

"This Protection Prohibits Government Officials from Detaining a Person absence of Probable Cause.".

As Stated Previously, Mr Reyna is in Pre Trial For State Charges, for which he was Granted release on Bond. Mr Reyna asserts That by issuing The "Federal Administrative Hold", ICE Foreseeably Caused PBSO To re-book him on a Constitutionally Invalid Warrant, without Probable Cause That he had Committed a Crime, and Thus Extending his detention as a result.

Mr Reyna, alleges That his detention violates The Fourth Amendment; Specially he asserts That PBSO's Policy and Practice of detaining Individuals based Solely on a "Federal Administrative hold", or "Immigration hold", or "ICE hold" is a Warrantless arrest and directly Violates his Protection Under The Fourth Amendment Right to be Free From unreasonable Search and Seizure.

Mr Reyna interprets This Protection to Prohibit the Defendants from detaining him in The absence of Probable Cause, which will require An arrest warrant To be determine by a Neutral Judicial authority independent of The Defendants and Prosecution.

The Plaintiff argues That Such administrative warrant — Issued by ICE Personnel without a Judicial or independent Findings of Probable Cause That The Person Subject To The warrant has Committed a Crime — Does not Provide PBSO The Authority To Continuasly Detain The Plaintiff For a civil Immigration violation.

Moreover, as ICE itself has admitted, ICE detainers, Do not Confer Upon The receipient agency The Legal authority to make an arrest. ICE has specially Conceded this Point in numerous cases. See Gonzales V. ICE, 466 F. Supp. 3d. 995, 1016 (noting ICE's Concession That "a detainer itself does not Provide The legal authority For a state or local officer to make a civil immigration arrest."), and

Moreno V Napolitano, 213 F. supp. 3d 999, 1005 (2016)
( noting ICE's Concession in its summary Judgement brief
That an arrest based solely on an ICE detainer constitutes
a warrantless arrest.)

The Moreno Court Further held That because "ICE
officers make no determination whatsoever that the subject
of a detainer is likely to escape upon release before a
can be obtained, ICE issuance of detainers that seek
to detain individuals without a warrant Goes beyond its
statutory authority ... and violates the Fourth Amendment." and

In NS V Hughes, 335 F. R.D 337 (2020), which resembles
Mr Reyna's Experience, There The Court held That:

" Unlawful seizure of alien, who was detained by officers
of The United States Marshall's Service For Suspected Immigrations
violation(s) after he was released to his own recconnizance in
Criminal Proceedings; and Proposed class members was irreparable
harm, as required for issuing Preliminary injunction; Deprivation
of Liberty That included being shackled and detained was a
serious infringement on ones Personal freedoms and The Fact
That class members were detained for only a few hours
Did not change That Fact."

Here in This Case, Mr Reyna was subjected to the same
Threatment as The Cited Cases; (1) he was held on an invalid
Detainer, and was Booked on it without Probable Cause That
a Crime had been committed by him. To date Mr Reyna is still
under the vail of Such unlawful warrant, hold or detainer;
(2) he was subsequently detained after Posting Bond and being
released by The State Court and was illegally seized in violation
of his Fourth Amendment Rights and Protection; As "a new
Fourth Amendment Seizure occurs if, as a factual matter a Persons
Detention is Extended because an immigration Hold". Ochoa V
Campbell 266. F. supp 3d 1237 (2017). And such Extended Detention
or seizure was without Probable Cause.

The Plaintiff will Like to re-assert That he is in a indefinete Perpetual Extended detention Loop, and due to Likely delays in Trial due to Covid-19, it is unclear how long he may be held.

With the Foregoing, Mr Reyna is confident That he will win on The merits of This 1st claim, and humbly asks This court to to issue an 'Ex Parte TRO' to Thwart The Defendants from enforcing an invalid unconstitutional warrant, hold or Detainer and remove such, So That he can Post bail once more and not be Taken unlawfully by ICE.

NOTE: Supporting case Law for Mr Reyna's Argument.

"PreTrial Detainee was Likely to Succeed on merits of his § 1983 claim, alledging That his continued detention by county based on immigration hold, beyond time he would have otherwise be in County custody on State Criminal charges, was unlawful seizure under The Fourth Amendment, as Required To be entitled To Temporary Restraining order 'TRO') directing 'DOC' To remove his immigration hold so he could Post bail on his State charges and be released from custody; 'DOC' Could not enforce immigration Laws and Thus had no Authority To effectuate DHS administrative warrant, finding Probable cause to believe detainee was removable from The United States, absent request, Direction, authorization, or other instruction from Federal Authorities to 'DOC' asking for Detention." Ochoa V. Campbell. 266 F. Supp 1237 (2017).

See Miranda-Olivares V. Clackamas CnTy. No 3:12-cv-02317-57, 2014 WL 1414305 ( D. OR. Apr 11 2014) ( Holding That Continuation of Detention Pursuant To ICE Detainer constituted a new seizure independent of Plaintiff Detention on State charges).

(2) <u>Federal Law:</u> Mr Reyna asserts That The Federal hold or warrant or detainer issued by ICE to hold him, is in Direct Violation for The issuance of warrants and lor Probable Cause. Fed. R. Crim. P. Rules 3, 4 and 9.

(a) <u>Federal Rule of Criminal Procedure #3 states:</u> "The Complaint is a written statement of The essential(s) facts Constituting The offense charged, Except as Provided in rule 4.1, it must be made under oath before a magistrate Judge or if none reasonably available, before a state or Local Judicial officer."

The Plaintiff Points to the Defendants warrant, hold or Detainer in Exhibit A, and Highlights That it does not comply with Rule 3 as no written complaint was issued under Oath in front of any Judicial officer or Authority, and Thus fails to Pass This Basic requirement.

(b) <u>Federal Rule of Criminal Procedure 4(a)</u>, on The issuance of an arrest warrant or Summons on a complaint states: "If The complaint or one or more affidavits Filed with The complaint establish Probable cause to believe That an offense has been Committed and That The defendant Committed it, The Judge must issue an arrest warrant.... A Judge may issue.... a Judge may take any action authorized by United States Law."

Mr Reyna Points out (a) The First requirement To obtain a Valid warrant; and That is, That a complaint or Affidavit(s), must be Filed to establish Probable cause; here The Defendants warrant fails to Show That This step was Taken. (b) The warrant, hold or detainer must have Judicial Authority of a Judge as as Specified multiple Times in The rule, here once more The defendants warrant or hold or detainer does not contain any Judicial authority instead is Signed and Authorized by Agent Damion Weston.

(C) Action is only Authorized by United States Law: The Defendants warrant, hold or detainer is in Direct conflict with one of The Fundamental Laws of The United States, The Fourth Amendment. (see claim #1).

   With The Foregoing, The Plaintiff asserts That The Defendants warrant, hold or detainer fails to comply with Federal Rule of Criminal Procedure 4(a) and Thus unlawful, invalid and it should not be used To detain him.

   (c) <u>Federal Rule of Criminal Procedure 9(a)</u> which states:
"The Court must issue a warrant... Establish Probable Cause To believe That an offense has been committed and That The defendant Committed it. The court may issue... The court may... issue a warrant. The Court must issue The arrest warrant."

   Here once more The defendants warrant, hold or detainer Fails To Comply with Rule 9(a) in its basic requirement as it does not have (1) Probable Cause under Oath, (2) That no crime has been Committed, and (3) it was not issued by any Court, but Rather an ICE Agent.
   See <u>Lopez V. Sessions</u> (No 18-cv-4189 (S.D. NY) June 12, 2018) (Explaining That The I-200 Form 'Does not require a neutral To evaluate The warrant' and instead Prepared for ICE Agents by ICE Agents.) (see exhibit A).

   Additionally, The Plaintiff cant help to notice an obvious conflict between The Powers of The Immigration and Naturalization Act ('INA) and The Powers of The Federal Rules of Criminal Procedure, as The INA ( 8 U.S.C § 1226(a) and 8 U.S.C § 1357 (a)(2)) Contradicts with The checklist codified in Fed. R. Crim. P. Rules 3, 4 and 9 For Probable Cause and The issueance of a warrant.
   The Plaintiff argues That The Federal rules are To be Followed in The issuance of a warrant instead of The INA and to support his argument he Points to a holding opinion Given by The United States Supreme Court in:

Bank of NovaScotia V United States 487 U.S, 250, 255, 108 S. CT. 2369, 101 L Ed 2d 228 (1988) held That with respect to Federal Rules of Criminal Procedure, "The Rule was Promulgated Pursuant To 18 U.S C §687 (1946 ed.) (currently codified, as Amended, at 18 U.S C § 3771) Which invested us with authority "To Prescribe, From Time to Time, rules of Pleading, Practice, and Procedure with to any or all Proceedings Prior to and including VerdicT....." Like Its Present-day Succesor, §687 Provided That after a rule became effective "all Laws in ConFlict There with shall be of No Further Force and effect." (Quoting From United States V. Payner, 447 U.S 727, 736, 100 S. CT. at 2446-2447, 65 L Ed. 2d 468 (1980)). < note: 18 U.S C §687 (1946 ed.) And Its Progenitor 18 U.S C § 3771 are now codified as amended, at 28 U.S.C 2072 >.

The Plaintiff asserts That with The foregoing, The defendants had no Federal Authority to arrest or Detain The Plaintiff, on a Federal invalid warrant, hold or Detainer and Thus he asks This Honorable Court To Please Grant This 'Ex Parte TRO' to To Thwart The holding or Execution of Such unlawful warrant, hold of Detainer.

(3) <u>The Administrative Procedure Act (APA):</u>

Mr. Reyna brings a claim against ICE Pursuant to the APA, Which Governs the Conduct of Federal Administrative Agencies in Which it states, That a reviewing court shall:

"Hold unlawful and Set aside agency action, Findings and conclusions found to be:

(a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with Law.

(b) Contrary to Constitutional Right, Power, Privilege or immunity,

(c) In Excess of Statutory Jurisdiction, Authority, or Limitation or short of Statutory Right;

(D) Without observence of Procedure required by Law."
5 U.S.C § 706 (2) (a)-(D).

The APA Provides For a Judicial review of all "Final Agency action For Which There is no other remedy in court," Except when "Statutes Preclude Judicial review" or The Agency action is committed to Agency discretion by Law.

Mr. Reyna argues, That ICE Exceeded its statutory Authority Under section 1357 when it issued a detainer against him Without Probable Cause determined by a neutral and impartial Magistrate and Without "any individualized assessment of his Risk of Flight."

Under 8 U.S.C § 1226(a) of The Immigration and Naturalization Act (INA), "an alien may be arrested and detained" while awaiting a Removal decision, but The arrest must be Pursuant to "a warrant issued by The Attorney General." With The Exception found in section 1357 (a)(2), but That Provision allows for a warrantless arrest only if There is a 'reason to believe' That The Suspected individual "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C § 1357 (a)(2).

Here, The detainer causing Mr Reyna's re-arrest was not accompanied by a Legal warrant. Thus, in effectuating Mr Reyna's warrantless arrest, ICE was required to comply with Section 1357 (a) (2).

Mr Reyna alleges (A) That without a determination That a suspected individual is "likely to escape before a warrant can be obtained", ICE exceded its statutory authority under Section 1357 (a) (2) and Thus violated 5 U.S.C § 706 (2) (c).

Mr Reyna asserts a claim against ICE under Section 706 (2) (c) of The APA based on the fact That ICE, in issuing his warrant, hold or detainer failed To comply with Section 1357 (a) (2), because The Agency (1) made no determination whatsoever about the chances That Mr Reyna would have been "likely to escape" before a warrant for his arrest could be obtained, (2) did not have probable cause to believe That he was removable from United States.

Mr Reyna points out That nothing in the warrant, hold or detainer states That a determination was made That he was a flight risk, and That his detainer was not supported by "a sworn, particularized statement showing of probable cause That he is a non-citizen and removable under Federal Immigration Law."

Therefore, Mr Reyna re-asserts That ICE exceded its statutory authority when it issued a detainer for him, because ICE failed to comply with the explicit requirement of Section 1357 (a) (2) and lacked probable cause That he was removable from The United States.

(B) Additionally The Plaintiff claims, That ICE violated 5 U.S.C § 706 (2) (b) in issuing a constitutionally invalid warrant, hold or detainer without probable cause nor any judicial assessment That Mr. Reyna had committed a crime or That he was a flight risk, as ICE did so "Contrary To Constitutional Right..." and violated 5 U.S.C 706 (2) (b) of The APA. see claim # 1

Furthermore, Mr Reyna alleges That (c) ICE violated 5 U.S.C § 706 (2) (D) where it states That "a court shall set aside agency action, findings and conclusions found to be.... 'without observance of Procedure required by Law."

The warrant, hold or Detainer issued by ICE - as Explained in Detail in claim #2 and Which can be referenced in Exhibit A - does not Posess the Key required elements for a Warrant as it was issued "Without the observence of Procedures required by Law." (Fed. R. Crim. P. rules 3, 4, and 9). Making the agencies actions in conflict with 5 U.S.C. § 706 (2)(D).

The Plaintiff highligths that ICE in issuing its warrant, hold or Detainer Pursuant to the Immigration & Naturalization Act (INA) cannot ignore the rules of Procedure required by Law: and as it is described in 28 U.S.C. § 2072 (b)

  "Such rules shall not abrige, enlarge or modify any Substantive Right. All Laws (Like the INA) in conflict with Such rules Shall be of no Further Force or Effect after Such rules have Taken effect."

The observance to the Federal Rules of Procedure, Mr Reyna understands to take Precedence over the INA, and thus rendering ICE's Warrant, hold or Detainer illegal or/and unlawfull, and it it Should not be used to Detain him.


Therefore, Mr Reyna humbly asks This Court to Grant his Ex Parte TRO so he can Gain his Liberty and be allowed to to Amend his Motion for a Formal Declaratory relief, and injunctive relief.

(4) Florida Constitutional Law:

"Mr Reyna asserts that PBSO is holding/held him in direct violation to the Florida's State Constitution Article I section 9 and 12."

(a) The Florida State Constitution Article I § 9 states:

"No Person shall be deprived life, liberty or property without due process of law, or be twice put in jeopardy for the same offense; or be compelled in any criminal matter to be a witness against oneself."

Mr Reyna alleges that when PBSO held him to await for ICE it violated Article 9, by holding him without a Judicial approved probable cause that a crime had been committed by the plaintiff, and by denying him access to his attorney while in confinement, and by not allowing him to see a Judge to understand the nature of his new Detainment.

(b) The Florida State Constitution Article I § 12 states:

"... no warrant shall be issued except upon probable cause ..."

Here as well PBSO by detaining Mr Reyna to await for ICE without probable cause violated Article I § 12 of the Florida Constitution.

With the foregoing, Mr Reyna has shown that the warrant, hold or detainer does not comply with Florida Constitutional Law, and thus by PBSO using it to detain him is once again unlawful.

(5) <u>Florida State Law</u>; Mr Reyna alleges That he is also being held in Direct violation of Florida State Law, specially Florida Statute 901.02.

Mr Reyna Points to Florida Statute 901.02(1), Which States on The subject of "issuance of arrest warrants" That only "A Judge, upon examination of The Complaint and Proof submitted..." Could a warrant be issued.

And a Little further on The same statute 901.02(2) states That "....The Court may issue a warrant...";

Clearly none of The Pre-requisites for a valid Judicial warrant are Present here. Therefore, here as well PBSO failed and violated Florida State Law in holding Mr Reyna to await for ICE and executed upon an unlawful warrant, hold or Detainer. <u>Claim #6</u>

(6) <u>Florida Rules of Criminal Procedure</u>; "Mr Reyna asserts that by Booking and/or holding him to await for ICE, PBSO violated F.R.C.P 3.121."

Florida Rule of Criminal Procedure 3.121 (a)(6) Plainly Explains on The issuance of warrants. Where it States That a warrant must "be signed by The Judge with The title of office; or may be electronically signed by The Judge..."

Here as well The warrant, hold or Detainer which PBSO is using To detain Mr Reyna fails to Comply with This rule; as clearly none of The documentation supporting The continued Extended detainment of / for Mr Reyna has The endorsement of any Court.

(7) False Imprisonment:

Under Florida and Federal Law, The County is unlawfuly Detaining The Plaintiff Pursuant to an illegal warrant, hold or Detainer, ~~hold~~ because The County acted without either Federal or State Judicial Authority To detain him for an alleged Civil immigration violation.

The Plaintiff was detained against his will, because he Posted Bond for his State charges; and was held to await for ICE; and such Detention was unreasonable and unwarranted; because The County did not have Judicial Authority nor Probable cause That he committed a crime or That The warrant was Constitutionally valid under State And Federal Laws.

<u>Memorandum of Law</u>

The Plaintiff's Verified Ex Parte Application for a Temporary Restraining Order (TRO) and accompanying declaration and Exhibit, and or affidavit support the following Conclusion of Law:

(i) <u>Ex Parte requirement</u>: The following outlines the reasons to not provide or give notice to the Defendants, in order to comply with "Federal Rules of Civil Procedure 65 (b)(i), in issuing notice without"

The Plaintiff strongly believes based on first hand Knowledge That, because he is in Custody at the Palm Beach Sherriff office (PBSO) main Detention Center, if he notifies the Defendants, They will retaliate by means of direct or indirect Punishment; Which is not unusual as he could be placed in isolation, worst Conditions, or/ and Physically retaliated against.

As an example of this Potential Behavior, The Plaintiff Points The Court To a recent Article in the Palm Beach Post, which was Published in The 'Local' Section entitled "Deputy Charged with Battery" written by Hannah Wiston, on Wendsday May 12, 2021, in which highlights the Conduct of some deputies in the Detention Centers. (See Exhibit V for Article details).

Additionally, The Defendants may try to erase crucial evidence from their Computer Systems and deny or make very difficult The Process of accessing Legal resources by means of delaying Legal mail, not allowing access to legal material and/or resources, and many other indirect efforts to hinder The Seeking and Completion of any injunctive relief.

The Plaintiff asserts That he is suffering everyday by his Detention, Depriving him of his Life and Physicall Liberty. NS V. Hughes. 335 F.R.D 337 (2020) ("Deprivations of Physicall Liberty are The actual and imminent injuries that Constitute Irrepairable haim; as required To issue Prelimenary injunction.")

With the foregoing in mind, The Plaintiff has shown why his instant case Complies with The No Notification (Ex Parte) requirement of Fed. R. Civ. P. Rule 65(b)(i).

Likelihood of Success:  Mr Reyna has shown in the foregoing That his Perpetual Extended Detention has violated his Protection under the Fourth Amendment - Right to be free from Unreasonable Search and Seizure-(Claim #1), and its Unlawful under the Federal Rules of Criminal Procedure (claim #2), and the Administrative Procedural Act (claim #3), and Florida Constitutional Law (claim #4), and Florida State Law (claim #5), and Florida Rules of Criminal Procedure (claim #6), and False Imprisonment (claim #7).

With all, if not with most of his claims. Mr Reyna has shown That his Detainment as a matter of Law, is illegal and Unconstitutional, and Therefore, the Plaintiffs confidence is high, That he will win on the merits, and if allowed to Amend his motion he will further show several more reasons as to why he is entitled to formal injunctive relief.

Mr Reyna will also like to highlight the Long Line of Precedence cases, which are alike or very much like his case, in which this Court and others have Granted Such relief on the very same Grounds:

Ochoa V. Campbell, 266 F. Supp 1237 (2017) Granting a TRO Directing DCC to remove the immigration hold so he could Post bail on his state Criminal charges and be released.

Lopez-Flores V. Douglas Cnty, 2020 WL 2820193 Denying county's motion to dismiss claim alleging Constitutional Fourth Amendment violation.

Alberto-Toledo V. Washington County, 2021 WL 535341 Order Granting compensatory and injunctive relief against the County based on a Fourth Amendment violation.

Gonzales V. United States Immigration & Customs Enft 975 F. 3d 788 (2020). Holding That Detainee has Standing to Seek injunctive relief... based on a Fourth Amendment Violation

Creedle V. Miami-Dade County, 349 F. Supp. 3d 1276 (2018) Granting in Part injunctive relief based on a Fourth Amendment Claim and an APA violation

_Lopez-Aguilar V. Marion County Sherriff_, 296 F. supp. 3d 959
Stipuated order Granted for a Declaration That County's Compli-
ance With ICE Detainers and immigration court removal orders
Without Criminal Probable Cause Violated The Fourth Amendment.

_N.S V Hughes_, 335 F. R.D 337 (2020)
Granting motion for Prelimenary Injunction alleging That USMS
was unlawfully Seizing individuals Suspected of immigration violations
Despite its Lack of authority to do So,

and many, many more...


Again, With Constitutional Law, and Federal Rules of Procedure,
and The Administrative Procedural Act, and Florida state Law, and
most importantly Jehovah God on his Side, Mr Reyna, feels Very
Confident That his Likelihood of Success is Very high.

<u>Irrepairable Harm</u> : Mr Reyna asserts That his unlawfull DeTainer Posses many irrepairable harms to The Plaintiff, (1) DePravation of his Constitutional Rights as it "Constitutes irrepairable harm or injury". <u>Ochoa v Campbell</u>, 266 F. SUPP. 1237 (2017) (2), and DePravation of Physical Liberty, as it "Constitute irrepairable harm or injury.", N.S V. Hughes, 335 F.R.D 337 (2020), and (3) his DeTention has Prevented him from much needed healthcare as The Plaintiff has Pre-Existing medical Conditions which Places him in The High Risk Category for Covid-19, along with Physical Pain cause by herniated Disc Problems in L4 and L5. (4) Given The hostile nature of The environment he is daily exposed to a high risk for Physical harm.

Constitutionally, Mr Reyna will like to Point This Honorable Court to an Opinion Cited earlier Given by The SuPreme Court, As The SuPreme Court stated on The SubJect of irrepairable harm;

"It is well establish That The DePravation of Constitutional Rights (as in Mr Reyna's case) Unquestionably Constitutes irepairable injury." Melendres V. Arpaio. 695 F. 3d 990, 1002 (9Th cir) (Quoting Eliod V. Burns, 427 U.S. 347, 373, 96 Sct. 2673, 49 L. Ed 547 (1976)).

Here in This Case There is no Doubt That Mr Reyna is suffering irrepairable harm and will Continue to daily Risk his Life unnesecerals and unlafully, unless relief is Granted by This Court.

## Harm Suffered by opposing Party:

The Defendants will not suffer any Concievable Hardships if the Court Grants the "Ex Parte TRO", as the Plaintiff is only one Prisoner Among Hundreds and loosing one Prisoner Cannot be regarded as a hardship; but rather a benefit, Since their Liability will be lessen by Mr Reyna being able to Get Proper health, Dental, and Vision Care, and be safe from the daily Threat of Physicall violence., and Free, as intended by the Judicial Authority which Granted his release in the First Place.

## Public interest:

Mr Reyna Points out that by ensuring that his Fourth Amendment Rights and Protection are Preserved, and laws observed: the Public interest will benefit by his Experience and the Decision of this Honorable Court.

The Public must take notice of the Unlawful Practices and abuse of Power which is occurring every day; And Petition their Law makers to do Something about it.

Because if it could Happen to Mr Reyna, as its Happening to others, it could Happen to Anyone. And Thus, the Public interest will be served by the ensurance that their Constitutional Rights, Laws, and Rules are Preserved and Followed, as they are not meant to be Broken or abused.

The Public has a Great interest in Ending the Unconstitutional selective application of holding Prisoner without Due Process. There is no Social Utility ~~or interest~~ in allowing Defendants to Continue the Facilitation of Systematic abuse or Legal/illegal oppression.

With the foregoing Mr Reyna has shown that this motion Meets all the requirements set forth in Fed. R. civ P Rule 65(b)(1). and has shown in detail how the aspects of his Case Nesecitate the Granting of such relief.

NOTE:

'Mr Reyna asks this Court to forgive for the Sloppy way this motion is complied and ask to Please any spelling or other errors found within. in the absence of a Computer this is the best one can do.'

## Conclusion

In Summary, Mr Reyna has shown via Exhibits and his Verified statement That an, Rather a relief is warranted based based on The claims set forth, Mr Reyna asks This Court To Grant his 'Ex Parte TRO' to Thwart The defendants from acting on, Executing or enforcing a Constitutionally invalid warrant or Detainer by entaining the Defendants, so he can further show via a formal injunctive relief Process other additional Factors for which a Formal Grant is warranted.

Additionally, Mr Reyna will be seeking for, along a Formal injunctive relief, a declaratory Judgement against The Defendants.

I, Jose Luis Reyna, Declare in accordance with Federal Statute 28 U.S.C & 1746 under Penalty of Perjury by This sworn Declaration That The information and Facts Provided Herein are, within The best of My Knowledge and belief, True in accordance with The Constitution and the laws of The United States of America.

x _____          Date: ___5/31/21___

Jose Luis Reyna                      # 0252767
Name                                 Inmate I.D.

Address: Main Detention Center
         Jose Luis Reyna
         S8B, 0252767
         P.O Box 24716
         West Palm Beach, Florida 33416